2025 Tex. Bus. 35



The Business Court of Texas,
1st Division

| | | |
|---|---|---|
| RIVERSIDE STRATEGIC CAPITAL FUND I, L.P.; RSCF BLOCKER TRUE HEALTH, LLC; and RSCF I-A BLOCKER TRUE HEALTH, LLC, *Plaintiffs* | § § § § § | |
| v. | § § | Cause No. 25-BC01B-0006 |
| CLG INVESTMENTS, LLC; CHRISTOPHER GROTTENTHALER; COVERT INVESTMENT OPERATIONS, LLC; TRUE HEALTH DIAGNOSTIC MANAGEMENT LLC; L. RICHARD COVERT; LCG VENTURES II, LLC; FERNANDO DE LEON; TIMOTHY TATROWICZ ALBA DURATA, LLC; TOM D. WIPPMAN, in his capacity as trustee of the Tom D. Wippman Revocable Trust; MARK THOMAS SMITH; ALEXANDRA NETTESHEIM; KYLE NETTESHEIM; ROBERT J. OSTERHOFF; RJ INVESTMENTS; MATT MILBURN; MICHAEL A. | § § § § § § § § § § § § § § § § § § § § § § § § | |

| CLEMENTS; MICHAEL | § |
| OSTERHOFF; MELINDA L. | § |
| MILBURN; KAREN A. MILLER; | § |
| JACK NOVAK; EDWARD | § |
| MCCAN; DANIEL | § |
| GROTTENTHALER; ANITA | § |
| GROTTENTHALER; DANA M. | § |
| HOVIND; CHRISTIAN | § |
| RICHARDS; CHRISTOPHER W. | § |
| KLING; in his capacity as trustee | § |
| of Christopher W. & Marissa M. | § |
| Kling Rev Trust u/a/d 5/11/2012; | § |
| KEVIN M. NELLIS; CAROL A. | § |
| NELLIS; BRUCE ZIVIAN; RYAN | § |
| NELLIS; and ANCELMO E. | § |
| LOPES, *Defendants* | § |

═══════════════════════════════════════

**OPINION**

═══════════════════════════════════════

## *Syllabus[1]*

*This opinion addresses when statutes of limitations accrue and the application of the discovery rule and fraudulent concealment principles regarding claims of fraudulent statements contained in a securities purchase agreement.*

---

[1] The syllabus was created by court staff and is provided for the reader's convenience. It is not part of the court's opinion, does not constitute the court's official description or statement, and should not be relied upon as legal authority.

# I. OPINION

[¶ 1]  This fraud case arises out of a securities purchase agreement. Plaintiffs invested into a healthcare company that provided laboratory management and diagnostic services.  They allege that the defendants made false representations regarding the company's compliance with applicable laws.

[¶ 2]  Plaintiffs sued the defendants for (i) fraud, (ii) money had and received, and (iii) conspiracy.

[¶ 3]  Defendants moved for traditional summary judgment arguing that statutes of limitations bar plaintiffs' causes of action.  The outcome rests on when plaintiffs knew, or should have known through the exercise of reasonable diligence, facts giving rise to their causes of action.

[¶ 4]  The summary judgment evidence conclusively establishes that plaintiffs were aware of facts, conditions, or circumstances more than four years before filing suit that would cause a reasonably prudent person to make an inquiry that if pursued would have led them to discover their causes of action.  This inquiry notice is legally equivalent to knowledge of the causes of action.  Thus, plaintiffs' claims are barred because they failed to sue within the limitations period.  Further, they failed to raise a genuine issue of material fact

regarding fraudulent concealment.

## II.  JURISDICTION AND VENUE

[¶ 5]  This court has subject matter jurisdiction because this is an action arising out of a qualified transaction and the amount in controversy exceeds $10 million.  TEX. GOV'T CODE § 25.A.004(d)(1).[2]  The court also has jurisdiction under TEX. GOV'T CODE § 25.A.004(b)(2) because this is an action regarding the internal affairs of an organization and the amount in controversy exceeds $5 million.  TEX. GOV'T CODE § 25.A.004(b)(2).

## III.  THE SUMMARY JUDGMENT RECORD

[¶ 6]  The court considered the pleadings, summary judgment submissions, and related oral arguments.

## IV.  FACTS

### A. The Parties and Related Entities

[¶ 7]  True Health Group LLC provided laboratory management and diagnostic services for the healthcare industry.[3]  Plaintiffs invested in True

---

[2] Effective September 1, 2025, the legislature lowered the qualified transaction monetary threshold from $10 million to $5 million.  *See* Tex. H.B. 40, 89th Leg., R.S. (2025).  However, plaintiffs filed this suit before that change became effective.  So, the $10 million threshold applies to this case.

[3] Plaintiffs' Original Petition (Pet.) ¶ 1.

Health.  Defendants were "significant equityholders" in True Health.[4]

[¶ 8]   Plaintiff Riverside Strategic Capital Fund I L.P. is a Delaware limited partnership investment fund.[5]

[¶ 9]   Plaintiffs RSCF Blocker True Health, LLC and RSCF I-A Blocker True Health, LLC are Delaware limited liability companies that Riverside used to structure its investment in True Health.[6]

## B. Investigations and Proceedings Against THD

[¶ 10]   In March of 2014, Christopher Grottenthaler founded True Health Diagnostics (THD), True Health's predecessor.[7]

[¶ 11]   In 2015, THD purchased the assets of another laboratory company called Health Diagnostics Laboratory, Inc. (HDL).[8]  Prior to the acquisition, HDL was allegedly driven out of business because of pervasive healthcare fraud.[9]

[¶ 12]   In November of 2015, THD signed a laboratory processing

---

[4] Pet. ¶ 1.  The parties' agreement defines "significant equity holders" to mean "the members of the Company set forth on the signature pages" thereto.  Securities Purchase Agreement (SPA) at Preamble (Defs' 1 App. 0014).
[5] Pet. ¶ 11.
[6] Pet. ¶s 12–13.
[7] Pet. ¶ 57.
[8] Geren Declaration ¶ 4 (Defs' 2 App. 0583).
[9] Geren Declaration ¶ 4 (Defs' 2 App. 0583); Trustee Lawsuit at 21 n.17 (Defs' 2 App. 665).

agreement with Little River Healthcare (LRH).[10]

[¶ 13]   The next year, THD underwent a corporate reorganization and became True Health's subsidiary.[11]

[¶ 14]   Prior to Plaintiffs' (Riverside) investment into True Health, the company had been accused in online articles of continuing the fraudulent activities that had resulted in HDL going out of business.[12]   Riverside was aware of these articles.[13]

[¶ 15]   On April 29, 2016, Cigna issued THD with a notice of claims review and audit.[14]

[¶ 16]   A few days later, United Healthcare halted laboratory claim reimbursements to THD due to compliance concerns.[15]

[¶ 17]   Later that year, Medicare investigators visited True Health's headquarters, requested documents, placed several referring physicians on prepayment review, and commenced a billing audit.[16]

[¶ 18]   On January 26, 2017, Riverside invested $50 million into True

---

[10] Pet. ¶ 57.
[11] Pet. ¶ 62.
[12] *See* Pls' 2 App. 255–59.
[13] Greenberg Depo. at 282:5–284:23 (Defs' 2 App. 0548).
[14] Trustee Lawsuit ¶ 129 (Defs' 2 App. 0679).
[15] Trustee Lawsuit ¶ 129 (Defs' 2 App. 0679).
[16] Trustee Lawsuit ¶ 128 (Defs' 2 App. 0679).

Health in exchange for preferred True Health units and the right to buy more units on a diluted basis by executing the Securities Purchase Agreement (SPA) and Exchange Agreement.[17]  CLG Investment, LLC was appointed as the "Equityholders' Representative" for the deal.  Christopher Grottenthaler was at all relevant times CLG Investments, LLC's managing member.[18]  Further, as part of this deal, Riverside managing director Hal Greenberg became a True Health board member.[19]

[¶ 19]   On March 2, 2017, the U.S. Department of Justice served True Health with a Civil Investigative Demand (CID) concerning possible Anti-Kickback Statute and Stark Law violations and other issues.[20]

[¶ 20]   Three months later, the Centers for Medicare & Medicaid Services (CMS) placed True Health on a 100% suspension of Medicare payments and provided a notice that the suspension was due to "credible allegations of fraud" regarding billing practices and claim submissions.[21]

[¶ 21]   However, a month later, CMS reduced the suspension to 35%.[22]

---

[17] Pet. ¶ 63.
[18] Pet. ¶ 64.
[19] Greenberg Dep. 110:17–23 (Defs' 2 App. 0539); Board Minutes (Defs' 1 App. 0150).
[20] CID (Defs' 1 App. 0363–87).
[21] Pet. ¶ 73; CMS Notice of First Suspension (Defs' 2 App. 0388-91).
[22] Pet. ¶ 74; Zucker Declaration ¶ 18 (Defs' 2 App. 0603).

[¶ 22]   After the first CMS suspension, Riverside invested another $30 million into True Health to keep the company afloat and subsequently took control of the board in May of 2018.[23]

[¶ 23]   On November 19, 2018, a non-Riverside True Health board member met with the U.S. Department of Justice to discuss the investigations into True Health, including the kickback allegations.[24]

[¶ 24]   Between June of 2017 and May of 2019, True Health took substantial steps to address the CMS's and Department of Justice's concerns, including hiring regulatory counsel and financial advisors.[25]

[¶ 25]   During this time, True Health conducted quarterly board meetings that discussed the current legal issues facing the company, including a sealed *qui tam* lawsuit from 2015 that alleged various kickback schemes.[26] At least one Riverside representative attended each meeting.[27]

[¶ 26]   By June 6, 2019, True Health reached a settlement agreement with the federal agencies regarding the first suspension.[28]   The board of

---

[23] Pet. ¶ 75; Greenberg Dep. 183:12–15, 187:18–19 (Defs' 2 App. 0545–46).
[24] DOJ Meeting Notes (Defs' 2 App. 0515–23).
[25] Zucker Declaration ¶ 19 (Defs' 2 App. 0603).
[26] *Qui Tam* Lawsuit (Defs' 2 App. 0393–513).
[27] *See, e.g.*, 1Q17 Board Meeting Minutes (Defs' 1 App. 0138–47).
[28] Pet. ¶ 76.

directors approved this settlement.[29]

[¶ 27]  One week later, CMS placed True Health on a second 100% Medicare suspension due to further "credible allegations of fraud" for medically unnecessary service claims.[30]  These allegations, however, were distinct from the allegations in the first Medicare suspension.[31]

[¶ 28]  One month later, True Health sued CMS to stop the suspension and obtained a temporary restraining order.[32]  CMS responded by filing Special Agent Geren's declaration that described various wrongdoings by True Health in detail, including a scheme to use rural hospitals to obtain higher reimbursement rates and "medical services organizations" (MSOs) to funnel kickbacks to doctors.[33]

[¶ 29]  On July 22, 2019, that court denied True Health's preliminary injunction request to reinstate the Medicare payments.[34]  That court also denied True Health's motion to seal, making the Geren Declaration publicly available.[35]

---

[29] Pet. ¶ 76.
[30] Pet. ¶ 76; CMS Notice of Second Suspension (Defs' 2 App. 0525).
[31] CMS Notice of Second Suspension (Defs' 2 App. 0525).
[32] 2019 CMS Lawsuit (Defs' 2 App. 0551–74).
[33] Geren Declaration (Defs' 2 App. 0582–90).
[34] Zucker Declaration ¶ 22 (Defs' 2 App. 0604).
[35] Defs' 2 App. 0591–94.

[¶ 30]   The following week, True Health filed for bankruptcy.[36]  True Health's application for bankruptcy included Clifford A. Zucker's Declaration in Support of First Day Relief.[37]  Mr. Zucker was True Health's Chief Restructuring Officer.[38]  His declaration directly tied True Health's financial condition to the CMS suspensions.[39]

[¶ 31]   The bankruptcy court approved True Health's liquidation plan on November 26, 2019.  The plan was substantially completed by December 6, 2019.[40]

[¶ 32]   On April 6, 2020, the liquidating trustee sent a claim notice letter to True Health officers and directors threatening a lawsuit for breach of fiduciary duties for failing to monitor and control the company's legal compliance.[41]  Riverside's Hal Greenberg, Jay Reynolds, and George Benson were included in the list of those threatened by the liquidating trustee lawsuit.[42]

---

[36] Pet. ¶ 76; Zucker Declaration (Defs' 2 App. 0596–638).

[37] Zucker Declaration (Defs' 2 App. 0595–638).

[38] Zucker Declaration ¶ 1 (Defs' 2 App. 0596).

[39] Zucker Declaration ¶s 17–22 (Defs' 2 App. 0603–04).

[40] Pet. ¶ 77.

[41] Notice of Claim Against True Health Directors and Officers (Defs' 2 App. 0640–43).

[42] Notice of Claim Against True Health Directors and Officers at 1–2 (Defs' 2 App. 0640–41).

[¶ 33]   The trustee filed that lawsuit, without Greenberg, Reynolds, and Benson as defendants, on January 25, 2021.[43]  The trustee's lawsuit described in detail the same rural hospital and MSO schemes that Special Agent Geren discussed in his declaration, among other issues.[44]

[¶ 34]   In April 2022, the court unsealed the *qui tam* lawsuit.[45]

[¶ 35]   In October 2022, the U.S. District Court for the Eastern District of Texas unsealed a criminal case that revealed that a grand jury had indicted Christopher Grottenthaler in part based on the Little River Healthcare (LRH) kickback scheme.[46]

[¶ 36]   Finally, on October 7, 2024, Christopher Grottenthaler entered a guilty plea to one count of conspiracy to commit illegal renumerations in violation of 18 U.S.C. § 371.[47]

## C. Procedural History

[¶ 37]   Plaintiffs (Riverside) filed suit in the 298th Judicial District Court of Dallas County, Texas on January 23, 2025.[48]

---

[43] Trustee Lawsuit (Defs' 2 App. 0645–726).
[44] Trustee Lawsuit (Defs' 2 App. 0645–726).
[45] Pet. ¶ 79.
[46] Pet. ¶ 80; Grottenthaler Indictment (Pls' 2 App. 609–59).
[47] Pet. ¶ 81.
[48] Pet.

[¶ 38]  Defendants removed the case to this court on March 7, 2025.[49]

[¶ 39]  Defendants then moved for traditional summary judgment arguing that each of Riverside's causes of action are barred by the applicable statute of limitations.[50]

[¶ 40]  Riverside alleged that defendants acted jointly and severally to misrepresent in the SPA that True Health was in material compliance with applicable healthcare laws.[51]  Riverside claims these misrepresentations induced it to enter the SPA and invest in True Health.  Because these representations were false, Riverside lost millions of dollars.[52]  Thus, it sued defendants for fraud, money had and received, and conspiracy.

[¶ 41]  Riverside's claims are explicitly rooted in the LRH and MSO schemes discussed in the Geren Declaration.[53]

[¶ 42]  The parties briefed and the court held arguments on the summary judgment issues.  Subsequently, the court granted summary judgment, with this opinion following.

---

[49] Defendants' Notice of Removal.
[50] MSJ.
[51] Pet. ¶ 84.
[52] Pet. ¶ 87, 89.
[53] Pet. ¶s 57–61; Geren Declaration (Defs' 2 App. 0582–90).

## V. APPLICABLE LAW

### A. Summary Judgment Standards

[¶ 43]  A defendant may move for summary judgment at any point with or without supporting affidavits but must state the specific grounds within the motion. TEX. R. CIV. P. 166a(b) and (c).

[¶ 44]  A court *shall* grant summary judgment if the summary judgment evidence shows that there is no genuine issue as to any material fact and the movant, as a matter of law, is entitled to summary judgment on the issues expressly brought forth. *Draughon v. Johnson*, 631 S.W.3d 81, 87 (Tex. 2021) (citing TEX. R. CIV. P. 166a(c)).

[¶ 45]  All reasonable inferences will be taken in the nonmovant's favor, and all evidence favorable to the nonmovant will be taken as true. *JLB Builders, LLC v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021).

### B. Riverside's Causes of Action

[¶ 46]  The elements of fraud are that (i) a material representation was made, (ii) it was false, (iii) the speaker knew it was false when they made it or recklessly made it without knowing the truth, (iv) it was made with the intent that the other party act upon it, (v) the party acted upon it, and (vi) it caused injury to the party. *Formosa Plastics Corp. USA v. Presidio Eng'rs &*

*Contractors*, 960 S.W.2d 41, 47 (Tex. 1998). Plaintiff's reliance on the material representation must be justifiable. *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 654 (Tex. 2018).

[¶ 47] A claim for money had and received involves the plaintiff proving the defendant has money belonging to him in equity or good conscience. *Berryman's South Fork, Inc. v. J. Baxter Brinkmann Int'l Corp.*, 418 S.W.3d 172, 189 (Tex. App.—Dallas 2013, pet. denied).

[¶ 48] Civil conspiracy requires (i) two or more persons, (ii) an object to be accomplished, (iii) a meeting of the minds on the object or a course of action, (iv) at least one overt, unlawful act, and (v) proximate damages. *Agar Corp., Inc. v. Electro Cirs Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019).

## C. Statutes of Limitations

[¶ 49] A defendant requesting summary judgment on the statute of limitations must conclusively establish "(1) when the cause of action accrued, and (2) that the plaintiff brought its suit later than the applicable number of years thereafter." *Draughon*, 631 S.W.3d at 89 (quoting *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 220 (Tex. 2004)).

### 1. Applicable Statutes of Limitations

[¶ 50] Fraud is subject to a four-year statute of limitations. *Williams v.*

*Khalaf*, 802 S.W2d 651, 658 (Tex. 1990); *see* TEX. CIV. PRAC. & REM. CODE §
16.004(a)(4).

[¶ 51]   Conspiracy applies the statute of limitations for the underlying
tort; because Riverside's cause of action is for fraud, the applicable statute of
limitations is four years in this case.[54]   *Agar Corp.*, 580 S.W.3d at 138;
*Williams*, 802 S.W2d at 658.

[¶ 52]   Money had and received has a two-year statute of limitations.
*City of Beaumont v. Moore*, 202 S.W.2d 448, 452 (Tex. 1947); TEX. CIV. PRAC.
& REM. CODE § 16.003.  Thus, if Riverside's fraud claim is time barred, then
its money had and received claim is also time barred and does not require a
separate analysis.

## 2. The Default Accrual Rule

[¶ 53]   A cause of action accrues when a legal injury occurs, regardless
of whether the injury has been discovered or all resulting damages have
occurred.  *Marcus & Millichap Real Est. Inv. Servs. of Nev., Inc. v. Triex Tex.
Holdings, LLC*, 659 S.W.3d 456, 461 (Tex. 2023).  A legal injury is an invasion
of a plaintiff's rights that gives rise to a cause of action.  *Murphy v. Campbell*,

[54] Pet. ¶s 83–89.

964 S.W.2d 265, 270 (Tex. 1997).

### 3. The Discovery Rule

[¶ 54]   The discovery rule concerns when accrual occurs and applies "[w]hen the nature of an injury is inherently undiscoverable, and the evidence of injury is objectively verifiable." *Est. of Ewers*, 695 S.W.3d 603, 620 (Tex. App.—Houston [1st. Dist.] 2024, no pet.).   Inherently undiscoverable means the injury is unlikely to be discovered in the limitations period even when exercising diligence. *Id.*

[¶ 55]   The discovery rule applies in fraud cases and defers accrual until the plaintiff knew or should have known of, through the exercise of reasonable diligence, facts giving rise to the cause of action. *Id.*; *Draughon*, 631 S.W.3d at 89.   However, the claimant need not know the exact nature of each wrongdoing, the actual cause, possible cures, or the exact wrongdoer. *Marcus*, 659 S.W.3d at 462.

[¶ 56]   The discovery rule accrual date has also been expressed in terms of "inquiry notice." *United Healthcare Servs., Inc. v. First Street Hosp. LP*, 570 S.W.3d 323, 336 (Tex. App.—Houston [1st Dist.] 2018, pet. denied).  Under this approach, knowledge of facts that would lead a reasonably prudent person to inquire and to discover the cause of action within the statute of limitations

period (critical date) is equivalent to knowledge of the cause of action for limitations purposes. *Id.*

[¶ 57]   Constructive notice of the alleged harm is presumed when there is publicly available and readily accessible information that would lead to the injury being discovered. *Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52, 58–59 (Tex. 2015).

[¶ 58]   The defendant bears the summary judgment burden to negate the discovery rule by either "conclusively establishing that (1) the discovery rule does not apply, or (2) if the rule applies, the summary judgment evidence negates it." *Draughon*, 631 S.W.3d at 90.   That is, the evidence conclusively establishes the discovery rule time period ended and the accrual period began more than four years before the plaintiff sued (for fraud claims).

### 4. Fraudulent Concealment

[¶ 59]   The fraudulent concealment doctrine has a similar effect as the discovery rule. *Marcus*, 659 S.W.3d at 463.   However, it tolls the statute of limitations (based on the defendant's conduct concealing the injury), instead of deferring accrual. *Ewers*, 695 S.W.3d at 620.   Also, the burdens are reversed between the two doctrines.

[¶ 60]   Fraudulent concealment is an equitable doctrine under which a

defendant cannot rely on the limitations defense if it deceitfully concealed the wrongdoing. *Borderlon v. Peck*, 661 S.W.2d 907, 909 (Tex. 1983); *Hooks*, 457 S.W.3d at 60.

[¶ 61]  The estoppel effect stops once a party learns of facts or circumstances that would lead a reasonably prudent person to investigate and, if pursued, uncover the wrongdoing. *Marcus*, 659 S.W.3d at 464.

[¶ 62]  Once the defendant establishes the statute of limitations defense, the burden shifts to the plaintiff to raise a fact issue regarding a fraudulent concealment counter-affirmative defense. *Draughon*, 631 S.W.3d at 93.

[¶ 63]  As discussed above, the discovery rule (accrual) and fraudulent concealment (tolling) account for separate, non-overlapping time periods.

## VI.  DISCUSSION

### A. Introduction

[¶ 64]  The court concludes that as a matter of law Riverside's cause of action accrued no later than April 6, 2020, when the trustee sent the claim notice letter to True Health's former directors and officers.

[¶ 65]  Several events preceding the letter support that conclusion. Each alone may have led a reasonably prudent person to make an inquiry that

would have led to Riverside uncovering its causes of action within the limitations period. However, the court resolves all reasonable inferences in Riverside's favor and takes all evidence favorable to Riverside as true. *JLB Builders*, 622 S.W.3d at 864.

[¶ 66]  Nevertheless, no reasonable person could have determined after April 6, 2020, that Riverside lacked sufficient evidence to begin an investigation into defendants' misrepresentations and that the investigation would have uncovered the fraud within the four-year period.

## B. Fraud and Conspiracy

### 1. Legal Injury

[¶ 67]  Riverside suffered a legal injury the day it signed the SPA because the SPA contained the allegedly fraudulent representations. *See Formosa Plastics*, 960 S.W.2d at 47. Essentially, Riverside overpaid for a healthcare services company that was allegedly violating healthcare laws and would go bankrupt.

[¶ 68]  However, because fraud is a type of injury to which the discovery rule categorically applies, the accrual date of Riverside's fraud and conspiracy claims is deferred until the discovery rule is negated. *Ewers*, 695 S.W.3d at 620.

### 2. Defendants conclusively negated the discovery rule.

#### a.   Knew or Should have Known / Inquiry Notice

[¶ 69]   Because of the information available, Riverside at least had inquiry notice, meaning they knew of facts that would lead a reasonably prudent person to begin investigating by April 6, 2020. *United Healthcare*, 570 S.W.3d at 336. This inquiry notice is equivalent to knowledge of its cause of action sufficient to begin the limitations period if that investigation would have uncovered a good faith basis to sue within the limitation period (critical date). *Id.*

[¶ 70]   Facts Riverside knew leading up to the trustee claim letter include:

- True Health acquired the assets and hired personnel from HDL, which went out of business because of systemic healthcare law violations.[55]

- Members of the public accused True Health of continuing the same medically unnecessary testing that HDL had been shut down for.[56]

- Cigna and United Healthcare halted laboratory claim reimbursements due to compliance issues.[57]

---

[55] Geren Declaration ¶ 4 (Defs' 2 App. 0583); Trustee Lawsuit at 21 n.17 (Defs' 2 App. 665).
[56] *See* Pls' 2 App. 255–59.
[57] Trustee Lawsuit ¶ 129 (Defs' 2 App. 0679).

- True Health received a CID and multiple suspensions from Medicare because of alleged healthcare law violations.[58]

- The Geren Declaration was made public, detailing the rural hospital and MSO schemes and providing specific facts that Riverside could have verified.[59]

- True Health filed for bankruptcy. The company is liquidated, wiping out $83 million that Riverside had invested and solidifying its legal injury.[60] As part of the bankruptcy filings, Clifford A. Zucker (Chief Restructuring Officer) provides a declaration that tied the bankruptcy to the CMS suspensions and improper business practices dating back to 2015.[61]

[¶ 71] Throughout all these events, Riverside occupied or controlled True Health's board of directors and received regular updates from the legal team.[62]

[¶ 72] Finally, on April 6, 2020, Riverside received a claim letter from the bankruptcy trustee, further tying the improper business practices to the resulting bankruptcy.[63] The notice accused the board and other directors of

---

[58] Pet. ¶s 73–76; Trustee Lawsuit ¶ 128 (Defs' 2 App. 0679); CMS Notice of First Suspension (Defs' 2 App. 0388-91); CMS Notice of Second Suspension (Defs' 2 App. 0525); Zucker Declaration ¶s 18–19 (Defs' 2 App. 0603).

[59] Geren Declaration (Defs' 2 App. 0582–90); Defs' 2 App. 0591–94.

[60] Pet. ¶s 76–77; Zucker Declaration (Defs' 2 App. 0596–638).

[61] Zucker Declaration (Defs' 2 App. 0595–638).

[62] Pet. ¶ 75; Greenberg Dep. 110:17–23, 183:12–15, 187:18–19 (Defs' 2 App. 0539, 0545–46); Board Minutes (Defs' 1 App. 0150); *see also, e.g.*, 1Q17 Board Meeting Minutes (Defs' 1 App. 0138–47).

[63] Notice of Claim Against True Health Directors and Officers (Defs' 2 App. 0640–43).

failing to control and monitor the company's legal compliance, blaming them for the bankruptcy. At this point, Riverside and its principals had an overriding personal interest to investigate the allegations, if only to prepare a defense to the trustee's allegations.

[¶ 73] Disinterested third parties related many of these facts to Riverside. Detailed allegations of fraud presented by a disinterested third-party individual would have led a reasonably prudent individual to investigate. *See United Healthcare*, 570 S.W.3d at 336.

[¶ 74] Further, Riverside need not know the exact nature, cause, possible cures, or person responsible for the wrongdoing. *Marcus*, 659 S.W.3d at 462. It needed to know only that it should have investigated.

[¶ 75] Thus, by April 6, 2020, Riverside had notice of (i) a history of allegations against True Health for illegal business practices and (ii) investigations engaged in by disinterested third parties tying those improper business practices to Riverside's economic loss and even accusing Riverside's principals of wrongdoing themselves. The court concludes that as a matter of law this is sufficient notice to begin the accrual period for Riverside's fraud and conspiracy causes of action.

[¶ 76] Finally, Riverside argues throughout its response that True

Health's general and outside counsel assured Riverside that True Health was not violating healthcare laws.[64] However, as a sophisticated entity, the court holds Riverside responsible for knowing that "[a] lawyer employed or retained by an organization represents the entity" not the individual shareholders. TEX. R. PROF. COND. 1.13; *see In re Mktg. Invs. Corp.*, 80 S.W.3d 44, 49 (Tex. App.—Dallas 1998, orig. proceeding) ("In a corporation's affairs [] there is but one client—the corporation."). Accordingly, the court concludes that Riverside's reliance on True Health's counsel did not absolve it of an independent duty to investigate.

### b. A reasonable investigation would have uncovered the fraud.

[¶ 77] Based on an April 6, 2020, accrual date, the evidence must conclusively show that Riverside would have discovered its good faith right to sue by April 6, 2024 (critical date) had it conducted a reasonable investigation. *Ewers*, 695 S.W.3d at 620.

[¶ 78] Had Riverside conducted a reasonable investigation into the SPA's misrepresentations, it would have discovered the fraudulent scheme. *See Marcus*, 659 S.W.3d at 464. Riverside concedes that the agreement with

---

[64] Riverside's Opp. to MSJ at 15–16, 22, 41–45.

Little River Healthcare, which facilitated violations of multiple healthcare laws, existed since 2015.[65] The LRH agreement explicitly outlines the fraudulent activities, including the MSO and rural hospital schemes, and establishes that the improper business practices predated the SPA.[66]

[¶ 79] True Health's fraudulent schemes involved extensive transactions and payments, all of which would have been reflected in the business books and records.[67] Riverside makes no argument as to why it could not have found these records by April 6, 2024.

[¶ 80] Riverside had a statutory right to look at the books and records or could have instigated an independent investigation to reveal the fraud. 6 Del. C. § 18-305.

[¶ 81] Further, there was readily accessible and publicly available information sufficient to give Riverside actual or constructive notice which also begins the limitations period. *See Hooks*, 457 S.W.3d at 58–59.

[¶ 82] Finally, Riverside's ability to uncover these schemes is evidenced by the various individuals who did so prior to April 6, 2020,

---

[65] Pet. ¶s 57–61.
[66] Pet. ¶s 58–61.
[67] Pet. ¶ 81.

including members of the public, Special Agent Geren, and CMS.[68]

[¶ 83]   In the four years between April 6, 2020, and April 6, 2024, the liquidating trustee also uncovered True Health's fraudulent schemes.[69]

[¶ 84]   Further, two years after the bankruptcy liquidation occurred, the United States District Court for the Eastern District of Texas released the indictment against Christopher Grottenthaler.[70]  That indictment detailed the fraud that began before the SPA.

[¶ 85]   The *qui tam* lawsuit was also unsealed during this period.[71]

[¶ 86]   At a minimum, these cumulative third parties' actions and their ability to uncover the alleged fraud conclusively shows what Riverside could have reasonably discovered had it investigated.

### 3. Riverside failed to raise a genuine issue of material fact regarding fraudulent concealment.

[¶ 87]   Based on an April 6, 2020, accrual date, a four-year limitations period, and a January 23, 2025, filing date for this lawsuit, Riverside needed

---

[68] *See* Pls' 2 App. 255–59; Geren Declaration (Defs' 2 App. 0582–90); Trustee Lawsuit at 21 n.17 (Defs' 2 App. 665); CID (Defs' 1 App. 0363–87); CMS Notice of First Suspension (Defs' 2 App. 0388–91); CMS Notice of Second Suspension (Defs' 2 App. 0524–27).

[69] Trustee Lawsuit (Defs' 2 App. 0645–726).

[70] Grottenthaler Indictment (Pls' 2 App. 609–59).

[71] Pet. ¶ 79; *Qui Tam* Lawsuit (Defs' 2 App. 0393–513).

292 days of tolling to defeat the statute of limitations.

[¶ 88]   However, Riverside adduced no evidence that defendants said anything about the wrongdoing, nor did Riverside argue defendants concealed anything from them after April 6, 2020.  Thus, Riverside provided no evidence that would create a genuine material fact issue of fraudulent concealment after April 6, 2020.

[¶ 89]   Therefore, as a matter of law, Riverside cannot rely on fraudulent concealment to defeat defendants' summary judgment motion.

[¶ 90]   Accordingly, because Riverside's causes of action accrued no later than April 6, 2020, which is more than four years before it filed suit on January 23, 2025, and because no tolling applies, its fraud and conspiracy claims are barred by the statute of limitations.

## C. Money Had and Received

[¶ 91]   Riverside's money had and received cause of action has a two-year limitations period.  Because defendants proved the four-year limitations period bars Riverside's other causes of actions, the money had and received limitations cause of action is also barred.

## VII.  CONCLUSION

For the above reasons, the court granted defendants' motion for summary judgment.

So ORDERED.

BILL WHITEHILL
Judge of the Texas Business Court,
First Division

SIGNED:  September 17, 2025

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 105709538
Filing Code Description: No Fee Documents
Filing Description: Opinion
Status as of 9/17/2025 1:12 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Morgan DMeyer | | morgan.meyer@wickphillips.com | 9/17/2025 1:09:40 PM | SENT |
| Sean Lemoine | | sean.lemoine@wickphillips.com | 9/17/2025 1:09:40 PM | SENT |
| Rashella Widdoes - Paralegal | | widdoes@RoggeDunnGroup.com | 9/17/2025 1:09:40 PM | SENT |
| Camille Youngblood | | camille.youngblood@wickphillips.com | 9/17/2025 1:09:40 PM | SENT |
| Rogge Dunn | | Dunn@RoggeDunnGroup.com | 9/17/2025 1:09:40 PM | SENT |
| Chinar Hassan | | chinar.hassan@wickphillips.com | 9/17/2025 1:09:40 PM | SENT |
| Zachary Farrar | | Zachary.Farrar@wickphillips.com | 9/17/2025 1:09:40 PM | SENT |
| Ashley A.Hutcheson | | ashley.hutcheson@wickphillips.com | 9/17/2025 1:09:40 PM | SENT |
| Adam Gogolak | | amgogolak@wlrk.com | 9/17/2025 1:09:40 PM | SENT |
| William Savitt | | wdsavitt@wlrk.com | 9/17/2025 1:09:40 PM | SENT |
| Michael Avi-Yonah | | MSAviYonah@wlrk.com | 9/17/2025 1:09:40 PM | SENT |
| Business Court 1B | | BCDivision1B@txcourts.gov | 9/17/2025 1:09:40 PM | SENT |
| Ryan Downton | | ryan@thetexastrialgroup.com | 9/17/2025 1:09:40 PM | SENT |
| Karina Enriquez | | karina.enriquez@wickphillips.com | 9/17/2025 1:09:40 PM | SENT |
| Lane Webster | | webster@RoggeDunnGroup.com | 9/17/2025 1:09:40 PM | SENT |
| Harvey Joseph | | Joseph@roggedunngroup.com | 9/17/2025 1:09:40 PM | SENT |
| Barb Morgan | | barb.morgan@wickphillips.com | 9/17/2025 1:09:40 PM | SENT |